**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EMILE CHREKY, | ) | |
| | ) | Civil Action No. 2:23-cv-00856 |
| Plaintiff, | ) | |
| | ) | Chief Judge Mark R. Hornak |
| v. | ) | |
| | ) | |
| UNIVERSITY OF PITTSBURGH PHYSCIANS, | ) | ELECTRONIC FILING |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]**

## I.    SUMMARY OF ARGUMENT

Defendant, University of Pittsburgh Physicians ("**Defendant" or "UPP**"), respectfully submits this Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment ("**Plaintiff's Opposition Brief**"). Plaintiff's Opposition Brief, Plaintiff's Response to Defendant's Statement of Undisputed Facts ("**Plf.'s Reply to DSOF**"), and Plaintiff's Statement of Additional Facts ("**PSOF**") mischaracterize the record, are replete with unreasonable inferences and unsubstantiated legal conclusions, and fail to set forth any genuine issues of material facts in an unconvincing attempt to survive summary judgment. Thus, UPP's Motion for Summary Judgment should be granted in its favor and against Dr. Chreky.

First, UPP's legal arguments are fatal to Dr. Chreky's harassment and retaliation claims. Dr. Chreky has expressly acknowledged that "Plaintiff is not pursuing his hostile work environment or retaliation claims at this stage and focuses this opposition on his age discrimination

---

[1] Unless otherwise defined herein, the capitalized terms in this Reply refer to terms as defined in the Memorandum of Law in Support of Defendant's Motion for Summary Judgment (ECF Doc. 64) and corresponding statement of facts in support (ECF Doc. 227).

claim…". *See* ECF Doc. 68 at p.9, FN 1. As a result, the foregoing claims in the Second Amended Complaint have been affirmatively waived and should be dismissed as a matter of law, *with prejudice.*

At this juncture, the sole remaining claim in the case for the Court's consideration is Dr. Chreky's age discrimination claim, which is equally unavailing. It is undisputed that Dr. Chreky had performance issues in 2020 that occurred before the Non-Renewal Notice was issued including, but not limited to, a pattern of professionalism and clinical issues. Under the governing standards, Dr. Chreky cannot create factual issues to survive summary judgment because he disagrees with UPP's handling of ER staff complaints about him or the quality of care provided. Under the applicable law, the issue is not whether UPP's actions related to Dr. Chreky's Non-Renewal were wrong or mistaken, but whether age discrimination was at the heart of the Non-Renewal Decision. Dr. Chreky's heavy reliance on stray remarks, unsupported conclusions, and innuendo to advance his narrative that UPP had implemented a plan to replace older physicians with younger ones should be disregarded as improper and otherwise mischaracterize the uncontroverted facts. Because Dr. Chreky has not established his burden, summary judgment should be granted in UPP's favor and against Dr. Chreky.

## II.    ARGUMENT[2]

### A.  The Undisputed Material Facts Are Compelling.

As an initial matter, Dr. Chreky fails to address Paragraphs 21-25, and 41 of the DSOF and, therefore, his responses thereto are waived.[3] Moreover, there are simply no genuine issues of

---

[2] Plaintiff's Opposition Brief makes many references to Federal Rule of Civil Procedure 50. While the standards of both Rule 50 and Rule 56 mirror each other, rule 50 occurs after the plaintiff has presented his case at trial, and accordingly it is the inappropriate time to reference Rule 50 at this point in the pleadings.

[3] ECF Doc. 71 at pp. 4 and 7.

material fact that, in 2020, concerns were raised about Dr. Chreky's performance. (Plf.'s Reply to DSOF ¶ 26)[4]. The evidence clearly supports that UPP had legitimate, non-discriminatory reasons for the Non-Renewal Decision. Any suggestion that the forgoing reasons are post ad-hoc rationalizations to support age discrimination is contradicted by the record. According to Dr. Wadas, the general expectation of ER physicians is that they provide the best quality care that they possibly can, given the resources they have; that they are respectful to one another, and that they work as a team to get the work done. (Plf.'s Reply to DSOF ¶ 76).[5]

Dr. Chreky does not dispute that in September 2020, T.H., an APP, complained in writing to the Assistant Administrator for UPP's Emergency Department about Dr. Chreky's treatment of him in September 2020 for contacting Dr. Kumar when Dr. Chreky was unavailable as well as Dr. Chreky's subsequent retaliation against him, i.e., the unsubstantiated Time Theft Claim. (Plf.'s Reply to DSOF ¶¶ 29-39; 44-46).[6] It is also undisputed that in October 2020, a Physician Assistant named J.S., complained that Dr. Chreky had left 45 minutes early, leaving him alone in the ER with a heart attack patient, and that Dr. Chreky leaves the ER for a period of time, avoids seeing patients, and refuses to see GYN patients (Plf.'s Reply to DSOF ¶¶ 48-50).[7] Dr. Chreky also has not and cannot dispute that on or about November 19, 2020, a Hospitalist named C.R. submitted a complaint about an interaction he had with Dr. Chreky related to Dr. Chreky's refusal to consult a patient's treating physician about a patient Dr. Chreky had wanted to admit to McKeesport. (Plf.'s Reply to DSOF ¶¶ 52-53).[8] It is also undisputed that Dr. Chreky was referred to PAP based on his

---

[4] ECF Doc. 71 at p. 4.

[5] ECF Doc. 71 at p. 15.

[6] ECF Doc. 71 at pp. 5-7, 8.

[7] ECF Doc. 71 at pp. 8-9.

[8] ECF Doc. 71 at pp. 9-10.

November 2020 Confrontation with the Hospitalist. (Plf.'s Reply to DSOF ¶ 73).[9]  Dr. Chreky's

2020 Performance Evaluation, which specifically noted the September 2020 Confrontation with

T.H. and November 2020 Confrontation with C.R. noted his performance "Requires

Improvement." (Plf.'s Reply to DSOF ¶¶ 81-82). [10]  Importantly, T.H., C.R., or J.S. played no

decision-making role in the Non-Renewal Decision of Dr. Chreky, nor are there any facts to

support that their complaints about Dr. Chreky were motivated by discriminatory age-based

animus.

Moreover, there is no dispute of fact that the Wrong Medication Incident and Worst Patient

Chart Incident had actually occurred and that they occurred shortly after Dr. Chreky met with Dr.

Kumar to discuss his 2020 Performance Evaluation on December 8, 2020.  (Plf.'s Reply to DSOF

¶¶ 83-86; 89-90; 91-98)[11]  That's why the foregoing incidents weren't mentioned in Dr. Chreky's

2020 Performance Evaluation.  That Dr. Chreky's administration of contraindicated medication to

a patient and submission of a woefully inadequate patient chart occurred relatively shortly after

Dr. Kumar met with Dr. Chreky to deliver his review does not support a finding of pretext, and,

further, these incidents are material to the Non-Renewal Decision.  Dr. Wadas testified that "it was

the last couple of events in 2020 and the conversations that really surrounded those events that

really raised significant concerns around, like, this is not going to be a salvageable relationship."

(Plf.'s Reply to DSOF ¶ 106).[12]

Although Dr. Chreky argues that UPP's reasons for the Non-Renewal Decision shifted and

changed over time, Dr. Chreky mischaracterizes the facts.  All of the foregoing reasons cited by

---

[9] ECF Doc. 71 at p. 15.

[10] ECF Doc. 71 at p. 16.

[11] ECF Doc. 71 at p. 16-20.

[12] ECF Doc. 71 at p. 22.

UPP for Dr. Chreky's Non-Renewal are consistent:  they are related to Dr. Chreky's deficient administration of patient care.  That the Wrong Medication Incident and Worst Patient Chart Incident were not mentioned in the EEOC Position Statement or that additional, legitimate, non-discriminatory reasons for the Non-Renewal Decision were identified in UPP's amended interrogatory responses does not prove pretext because they are consistent with a pattern of deficient patient care. *Martinez v. UPMC Susquehanna,* No. 4:19-cv-00327, 2022 WL 17156917 (M.D. Pa. Nov. 22, 2022) ("UPMC's two justifications are related rather than inconsistent. It chose to invoke the no-cause provision in Martinez's employment agreement rather than firing him for cause to immediately stop Martinez from seeing patients *because* he presented an unreasonable risk of harm. Therefore, '[a]t most, the jury could find that performance was an additional, but undisclosed, reason for the decision; the existence of a possible additional non-discriminatory basis for [Martinez's] termination does not, however, prove pretext.'").  Moreover, while Dr. Chreky claims that Dr. Wadas told him he was cancelling his contract due to "restructuring," which Dr. Wadas denies, Dr. Chreky has not identified any facts to support what was meant by "restructuring."  Notwithstanding the foregoing, Dr. Chreky has nonetheless failed to demonstrate that age was at the heart of the Non-Renewal Decision.  In fact, he has cannot demonstrate that UPP exhibited age-related animus in the wake of the fact that several of his colleagues, like Dr. T.A., who was born in 1957, worked in the McKeesport ER after Dr. Chreky's Non-Renewal (*See*, infra, Section II.C. below.)  Clearly, Dr. T.A. and others were not "restructured" out of the McKeesport ER due solely to their ages.

Finally, while Dr. Chreky denies certain aspects of what had occurred in his interactions with T.H. and C.R. including whether he raised his voice to T.H. or directed profanity toward C.R., and further disputes that he failed to take sufficient responsibility for administering contraindicated

medication and preparing a virtually useless patient chart, UPP, after review, ultimately determined that Dr. Chreky's actions fell short of UPP's expectations in the ER. (Plf.'s Reply to DSOF ¶ 76).[13] Dr. Chreky cannot defeat summary judgment by simply arguing that UPP's decision was wrong or employed a process with which he disagreed. *See Fuentes v. Perskie,* 32 F.3d 759, 765–67 (3d Cir. 1994) (holding that it is simply not enough to "show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent"; plaintiff's criticism of the employer's legitimate reason is not sufficient to create a material issue of fact).

### B. Dr. Chreky Mischaracterizes the Nature of His Employment History

Although Dr. Chreky insists he had a "clean" 20-year history at UPMC McKeesport ER in order to set the stage for his narrative that he was abruptly and unlawfully "terminated" based on his age when a "new leadership team" took over, the foregoing description of his career is disingenuous and unsupported by the undisputed facts. Dr. Chreky's initial Annual Contract with UPP, which governs the terms and conditions of his employment, only began on July 1, 2017. (Plf.'s Reply to DSOF ¶¶ 1, 17).[14] His Annual Contract was subsequently renewed in 2018, 2019, and 2020 (Plf.'s Reply to DSOF ¶ 19).[15] Thus, Dr. Chreky did not have an 18-year history with UPP, his employer and Defendant in this action, as he would have the Court find. (And even if he did, any suggestion that UPP should have ignored the clear and indisputable patient care and professionalism deficiencies that he displayed in 2020 due to the longevity of his career flies in the face of reason.)

---

[13] ECF Doc. 71 at p. 15.

[14] ECF Doc. 71 at p. 1, 4.

[15] ECF Doc. 71 at p. 4.

Dr. Chreky describes his own performance until 2020 as "exemplary."[16]  If , by exemplary, Dr. Chreky means his pre-2020 performance was highly commendable and worthy of imitation by others, this description is disingenuous and inaccurate.  It is beyond dispute that in Dr. Chreky's 2019 Performance Review, Dr. noted that she advised Dr. Chreky that "accessibility to staff and APP's is vital to the ED.  Carrying a charged phone (spectra link) and letting the staff know of his work location was discussed," and that she would "continue to monitor his accessibility." (Plf.'s Reply to DSOF ¶ 51).[17]  Thus, even before 2020, Dr. Chreky was on notice of concerns related to his accessibility to ER staff. (Those same accessibility issues arose again in 2020 vis-à-vis the complaints of T.H. and J.S. and became well known to Dr. Flaherty after she joined in January of 2021 through various complaints from ER staff.) (Plf.'s Reply to DSOF ¶¶ 107-113).[18]

Further, Dr. Chreky's characterization of the end of his employment as a "termination" is wrong.  UPP did not terminate Dr. Chreky; UPP did not renew Dr. Chreky's contract via a Non-Renewal Notice issued on March 5, 2021 — it was not a termination. (Plf.'s Reply to DSOF ¶¶ 114-118).[19] The Notice of Non-Renewal expressly states it was issued pursuant to Section 8.1 of the Annual Contract. (Plf.'s Reply to DSOF ¶¶ 17, 118).[20]  The Annual Contract has separate express written provisions pertaining to termination due to death and revocation of physician licensure (§8.2) and events triggering termination for cause (§8.3), which do not apply here. (Plf.'s Ex. 19)[21]  As a result, Dr. Chreky's argument that Dr. Chreky was entitled to, but did not receive, a notice and opportunity to cure fails.  (Def.'s Reply to PSOF ¶ 68). Finally, despite Dr. Chreky's

---

[16] ECF Doc. 68 at p. 5.

[17] ECF Doc. 71 at p. 9.

[18] ECF Doc. 71 at pp. 22-23

[19] ECF Doc. 71 at pp. 23-24.

[20] ECF Doc. 71 at pp. 4, 24.

[21] ECF Doc. 69-19 at p. 6.

assertions to the contrary, the Non-Renewal Decision was clearly not "abrupt," having followed a

pattern of documented, undisputed complaints in 2020. *See*, infra, Section II.A. above.[22]

### C. No Evidence of New Leadership Taking Over and Targeting Older Physicians for Removal

Dr. Chreky's theory that, in 2020, "a new leadership team took over" and immediately

began targeting older physicians for removal (Plf.'s Opposition Brief at p. 1) is belied by the

record. As an initial matter, Dr. Chreky does not identify the so-called "new leadership team" who

purportedly took over and implemented a plan to remove older physicians.  Dr. Chreky simply has

no facts to support his unsubstantiated assertion that "new leadership" "took over" in 2020 and

swept in to replace older physicians with younger physicians.  The only arguable "new leadership"

was Dr. Sarah Flaherty, but she did not join as ER Site Chief until January 1, 2021, and Dr. Chreky

concedes she played no role in his Non-Renewal Decision.  (Plf.'s Reply to DSOF ¶¶ 8, 102, 136).[23]

Moreover, there's no evidence that Dr. Flaherty targeted other older McKeesport ER physicians

for removal, either.  In fact, in 2022, there were at least three physicians in the McKeesport ER

born on or before 1962 who were employed at the same time as Dr. Chreky and who continued

their employment after he was Non-Renewed.  (Plf.'s Reply to DSOF ¶ 129).[24] These McKeesport

ER physicians include: Dr. T.A. who was born in 1957 (and still at UPMC McKeesport ER to this

day); Dr. K.R. (born in 1962); and Dr. T.F. (born in 1961).[25]  Dr. Flaherty also testified that she is

---

[22] UPP does not deny that non-renewal may be deemed an adverse employment actions for purposes of an employment discrimination claim, but denies that the Non-Renewal Decision in the instant matter was motivated by age discrimination.

[23] ECF Doc. 71 at p. 2, 21, 28.

[24] ECF Doc. 71 at p. 27

[25] ECF Doc. 66-5 at pp. 11-16.

aware of other UPMC community physicians like Dr. L.M. and Dr. M.F. who are "older" relative to other physicians. (Plf.'s Reply to DSOF ¶ 131).[26]

Dr. Chreky's attempt to string together mischaracterized, cherry-picked comments from emails to prove that UPP began targeting older physicians for removal is belied by the clear and indisputable record, which clearly sets forth the timing, content, and reason for any such comments.  For example, it is undisputed that by November 9, 2020, the September 2020 Confrontation with T.H.; the unsubstantiated Time Theft Claim; and the October 2020 Complaint about Dr. Chreky's Unavailability had all occurred.  (Plf.'s Reply to DSOF ¶¶ 29-50)[27]  Dr. Wadas's November 9, 2020 email to Dr. Harinstein mentioning that "clinical concerns are growing" and that "we need new boots on the ground" was mentioned in the context of yet another clinical concern raised by Dr. Chreky's actions – this time, related to a patient admission.[28] There is simply no evidence connecting the foregoing comments to a systematic plan to replace Dr. Chreky or anyone else due to their age.  Similarly, Dr. Chreky's argument that the "dead wood" comment proves UPP was trying to replace Dr. Chreky with a younger physician, namely, Dr. Kim, fails.  At issue is Dr. Wadas's email, which reflects:  "Plan for MCK — new leadership, remove some dead wood, improve every aspect of it."  (Def.'s Reply to PSOF ¶ 10).  According to Dr. Wadas, who made the comment, "dead wood" referred to embracing "new leadership," which would give an opportunity to improve overall patient satisfaction and the ER culture, which Dr. Wadas testified had been negatively affected by Dr. Chreky.[29]

---

[26] ECF Doc. 71 at p. 27.

[27] ECF Doc 71 at pp. 5-9.

[28] ECF Doc. 69-7 at p. 2.

[29] (Wadas Dep. 96: 18-25(Plf.'s Ex. 3 at ECF Doc. 69-3 at pp. 97-98.)

The "dead wood comment" came on the heels of a November 19, 2025 email exchange between Dr. Chreky and Dr. Harinstein in which Dr. Wadas expressed a lack of surprise that ER staff complained about Dr. Chreky — this time, C.R. reporting the November 2020 Confrontation with Dr. Chreky. (Def.'s Reply to PSOF ¶ 11). Dr. Wadas's comments that Dr. Chreky will "never change" and is "consistently getting worse in the last year" were clearly made in the context of Dr. Chreky's growing list of performance issues – there is no evidence of a concerted effort to remove and replace him based on age. (Def.'s Reply to PSOF ¶ 11).

Similarly, Dr. Chreky mischaracterizes and takes out of context several email exchanges in December 2020, in an unconvincing attempt to prove that the Non-Renewal Decision was made in early December 2020, and a paper trail was "manufactured" to justify UPP's decision.[30] A review of the cited testimony and documents reveal; however, that Dr. Chreky's assertions are supported by nothing but unreasonable inferences, baseless conclusions, and mere suspicion. (Def.'s Reply to PSOF ¶¶ 17-25). Moreover, it is undisputed that Dr. Yealy signed the Non-

---

[30] The November and December comments do not support Dr. Chreky's position that they establish direct evidence of discrimination. Dr. Chreky attempts to create a self-serving narrative that there is direct evidence establishing that he was subjected to age-based animus by taking comments made in two emails completely out of context. "Proving age discrimination by direct evidence is a 'high hurdle.'" *Frankhouser v. Horst Grp., Inc*., No. 5:20-cv-03741, 2022 WL 580509, at *4 (E.D. Pa. Feb. 25, 2022) (quoting *Cellucci v. RBS Citizens, N.A.,* 987 F. Supp. 2d 578, 587 (E.D. Pa. 2013)). Remarks made by decision-makers, even if seemingly age-related, must unambiguously convey that an employee is less desirable **because** of his age. *Id.*; *see also Gutknecht v. SmithKline Beecham Clinical Lab'ys, Inc.*, 950 F. Supp. 667, 670 (E.D. Pa. 1996) (recognizing that a comment that "does not relate to age on its face ... shows no age animus"). In *Frankhouser*, use of the term "retired in place" to describe the plaintiff was insufficient to demonstrate direct evidence of discrimination. *Frankhouser,* 2022 WL 580509 at *4. Seemingly age-related comments, such as "dead wood," "retired in place," etc., are not evidence of direct discrimination without any supplemental evidence to suggest these terms were used to denote age. *See, e.g.,* EEOC v. Clay Indus., 955 F.2d 936, 942 (4th Cir. 1992) (discussing how a supervisor's comment about "deadwood" referred to employee evaluations, regardless of age); Wado v. Xerox Corp., 991 F. Supp. 174, 202 (W.D.N.Y. 1998) ("'Dead wood' implies employees who are unproductive or superfluous," and "could just as easily include younger employees as older employees."); *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 513 (3d Cir. 2004) (holding that an employer's inquiries about retirement are "not direct evidence of age discrimination"). That is simply not the case here. In each instance that these comments were made, they are accompanied by statements regarding Dr. Chreky's poor performance/behavior concerns. The terms do not "directly show[ ] the necessary discrimination without inference or presumption, and thus ... do not meet the rigorous direct evidence requirement." *Cellucci v. RBS Citizens, N.A.,* 987 F. Supp. 2d 578, 588 (E.D. Pa. 2013). Dr. Chreky's baseless attempt to convolute these comments and take them out of context in hopes of crafting a narrative of age-based animus is unsupported and unavailing.

Renewal Notice, and that the decision regarding Dr. Chreky's renewal was made together with Dr. Wadas.  (Plf.'s Reply to DSOF ¶¶ 116-117).[31]  Yet, none of the so-called evidence proving that the final Non-Renewal decision occurred in early December 2020 reflects Dr. Yealy was involved in any such discussion.  Even if the Court were to believe that there is a factual issue regarding the timing of the Non-Renewal Decision, summary judgment cannot be avoided.  It is undisputed that there were several complaints about Dr. Chreky before December 2020 that could have justified Non-Renewal, and the Wrong Medication Incident and Worst Patient Chart Incident are additional but consistent evidence that Dr. Chreky's performance fell short of expectations.

Further, Dr. Chreky's theory that UPP targeted him for termination based on age while actively recruiting his replacement, Dr. Kim, flies in the face of the clear undisputable facts.  It is undisputed that Dr. Kim was not actively recruited by UPP.  (Plf.'s Reply to DSOF ¶¶ 149-150),[32] and any assertions to the contrary are supported by mischaracterized testimony and wholly unsupported conclusions and, therefore, should be disregarded.  (Def.'s Reply to PSOF ¶¶ 13, 15). Dr. Kim was not hired to replace Dr. Chreky; nor did UPP actively recruit Dr. Kim for this position. In fact, Dr. Kim reached out to UPP himself to express interest in staying with UPP post-residency. (Plf's Reply to DSOF ¶¶149-150)[33]  Dr. Kim was exploring several different options within the UPMC network and had no previous work experience with any of the attendings at UPMC McKeesport when he was still a resident.  When he joined, Dr. Kim split time between McKeesport (750 hours) and Mon Valley (750 hours), serving different communities, and by virtue of that split, would not have worked the same hours and schedule as Dr. Chreky or served the same patients.

---

[31] ECF Doc. 71 at p. 24.

[32] ECF Doc. 71 at p. 31.

[33] ECF Doc. 71 at p. 31.

(Plf.'s Reply to DSOF ¶152)[34]  Dr. Chreky's contract was for 1800 hours at McKeesport, while Dr. Kim only worked a fraction of that.  Thus, Dr. Chreky cannot establish that Dr. Kim served as his replacement.  *See Katz v. Beebe Healthcare*, No. 22-625-WCB, 2025 WL 1094406 (D. Del. Apr. 11, 2025) (determining that a physician was not "replaced" because the alleged "replacement" was hired for a different position and had actively inquired about the new role); *Capozzoli v. Cumulus Media Holdings, Inc.*, No. 20-4992, 2022 WL 909659, at *8 (D.N.J. Mar. 29, 2022) ("[H]iring a new employee generally does not constitute replacing the fired employee when the new 'employee is assigned to perform the plaintiff's duties in addition to other duties…'") (quoting *Michniewicz v. Metasource, LLC*, 756 F. Supp. 2d 657, 666 (E.D. Pa. 2010)).

Dr. Chreky's reliance on *Sempier* is misplaced because he mischaracterizes the court's holding. In *Sempier,* the Third Circuit held that the court could consider the ages of the two employees who assumed some of plaintiff's duties for purposes of determining if a replacement was "sufficiently younger" — not whether a staged progression of duties is sufficient to establish a comparable replacement. *Sempier v. Johnson & Higgins*, 45 F.3d 724 (3d Cir. 1995).  Essentially, *Sempier* established which employees may be considered for purposes of calculating age differences of replacements, not what would constitute a sufficient replacement as it relates to job duties.  Dr. Chreky fails to establish that Dr. Kim was specifically hired to replace him.

Dr. Chreky's argument that the age-related animus extended to Dr. Kumar is equally unavailing and supported by nothing but mere suspicion and innuendo.  *Parish v. UPMC Univ. Health Ctr. of Pittsburgh*, 373 F. Supp. 3d 608, 624 (W.D. Pa. 2019) ("[T]he non-moving party cannot rely on unsupported assertions, conclusory allegations or mere suspicions in attempting to

---

[34] ECF Doc. 71 at p. 31.

survive summary judgment."). Dr. Flaherty *was not approached about the ER Site Chief position* ***until months after*** *Dr. Kumar had tendered her notice of resignation*.  It is undisputed that (i) Dr. Kumar tendered notice of resignation in February 2020, (ii) that she told Dr. Wadas she planned to retire at end of December 2020; (iii) that on April 20, 2020, Dr. Wadas informed Dr. Kumar that UPP had commenced a plan for new oversight in the McKeesport ER; (iv) that Dr. Wadas contacted Dr. Flaherty in the Fall of 2020 to inform her that Dr. Kumar was resigning/retiring and that they were going to have an opening in leadership that he thought Dr. Flaherty should consider applying for the job; and (v) that Dr. Flaherty accepted her Department Chair position in November/December 2020).  (Plf.'s Reply to DSOF ¶¶ 135-144).[35]  There is simply no evidence, moreover, that Dr. Kumar's resignation was anything but voluntary, and all of Dr. Chreky's attempts to demonstrate otherwise are unsupported by the record.  (Def.'s Reply to PSOF ¶¶ 83-86)

In an age discrimination case, the Plaintiff must "show that age was the 'but for' cause of the adverse employment action—that age had 'a determinative influence on the outcome.'"  *Kelly v. Moser*, 2009 WL 3236054, *2 (3d Cir. Oct. 9, 2009) (citing *Gross v. FBL Fin. Servs.*, 129 S. Ct. 2343, 2350 (2009)).  Under this heightened causation standard, it does not suffice to show that age played some role in an employer's decision. *Id.* at *2-4.  Dr. Chreky's Opposition Brief fails to address this heightened causation standard entirely.  Beyond Dr. Chreky's failure to address this causation standard, Dr. Chreky's own testimony undercuts his argument that his age was the but-for cause of his Non-Renewal.  There is no evidence that Dr. Chreky reported any age discrimination whatsoever for any reason.  (Plf.'s Reply to DSOF ¶¶123-128)[36]  To the contrary,

---

[35] ECF Doc. 71 at pp. 28-30.

[36] ECF Doc. 71 at p. 26-27.

Dr. Chreky recalls expressing that what happened with C.R. was the basis for his Non-Renewal. (Plf.'s Reply to DSOF ¶ 124)[37]

**D. <u>There is no evidence that younger physicians were treated more favorably.</u>**

Dr. Chreky bears the burden of establishing that the individuals who are alleged comparators committed offenses of "comparable seriousness." *Opsatnik v. Norfolk S. Corp.,* 335 F. App'x 220, 223 (3d Cir. 2009) (finding no genuine issue of material fact where each purported comparator involves mitigating circumstances that distinguished their conduct from the plaintiff's). Dr. Chreky has not identified any facts to establish that the identified physicians were sufficient comparators. *See Durst v. City of Philadelphia*, 798 Fed.Appx. 710 (3d Cir. 2020) ("Although 'similarly situated' does not mean identically situated, the comparator must be similar in all relevant respects. Relevant factors include whether the comparators had the same supervisor, were subject to the same standards, and had engaged in similar conduct.") Nowithstanding the foregoing, the treatment of Dr. S. is clearly distinguishable. Dr. S. is not a proper comparator because his alleged misconduct was completely different from Dr. Chreky's, i.e., single incident involving use of a racially offensive term. (Def.'s Reply to PSOF ¶¶ 79-80). Dr. Wadas explained that Dr. S.'s use of the racial term[38] was an isolated incident and that it never occurred again. (Pl.'s Ex. 20, Wadas Dep. 32:5 – 33:6); (Pl.'s Ex. 21).[39] In sharp contrast, Dr. Chreky and Dr. C.'s behavior was recurrent and involved both clinical concerns, as well as behavioral concerns. (Pl.'s Ex. 20 (Wadas Dep. 32:5 – 33:6)).[40] Thus, Dr. Chreky has not satisfied the second *Fuentes* prong to establish pretext.

---

[37] ECF Doc. 71 at p. 26.

[38] Dr. Chreky mischaracterizes record evidence by asserting that Dr. S. said racially offensive "terms." Plaintiff's Ex. 21, pg. 1 states that a racially offensive "term" was used during one conversation.

[39] ECF Doc. 69-21 at pp 2-3.

[40] ECF Doc. 69-20 at pp. 33-34.

14

**E.  No Evidence of Age Discrimination Against Others in Protected Class.**

Dr. Chreky has not and cannot demonstrate that others in the protected class were treated less favorably on the basis of age.  As noted in Section II.C. (p. 13) above, there are absolutely no disputed facts whatsoever to demonstrate that Dr. Kumar's resignation from UPP was anything but voluntary, no matter how many stray remarks and attenuated facts Dr. Chreky tries to splice together to prove that UPP tried to get rid of Dr. Kumar.  *See Henry v. N. Westmoreland Career and Tech,* No. 09-751, 2011 WL 1136792 (W.D. Pa. Mar. 25, 2011) (holding that a stray remark made by a supervisor to another employee was not discriminatory because, amongst other things, the employee testified that he believed he was not discriminated against).  For all of the foregoing reasons, including those set forth in Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment (ECF Doc. 64), UPP respectfully requests that the Court grant its Motion for Summary Judgment in favor of UPP and against Dr. Chreky.

Respectfully submitted,


*/s/ Jennifer S. Park*
Jennifer S. Park
jennifer.park@dentons.com
PA ID 87733
Abigail Britton
abbie.britton@dentons.com
PA ID 333801

DENTONS COHEN & GRIGSBY P.C.
625 Liberty Avenue
Pittsburgh, PA  15222-3152
(412) 297-4900 / Fax: (412) 209-1975

*Counsel for Defendant,*
*University of Pittsburgh Physicians*

Dated: August 25, 2025
5332173.v3

15

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the foregoing Defendant's

Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment was

filed electronically on August 25, 2025. Notice of this filing will be sent to all parties by operation

of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Jennifer S. Park*
Jennifer S. Park
